DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**STATE OF FLORIDA,**
Appellant,

v.

**LUCAS STEVENSON,**
Appellee.

No. 4D19-3831

[December 2, 2020]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Edward Harold Merrigan, Judge; L.T. Case No. 19-638 CF10A.

Ashley Moody, Attorney General, Tallahassee, and Deborah Koenig, Assistant Attorney General, West Palm Beach, for appellant.

Carlos A. Canet of Law Office of Carlos A. Canet, P.A., Fort Lauderdale, for appellee.

CONNER, J.

The State appeals the trial court's order dismissing the felony information charging Lucas Stevenson ("the defendant") with possession of Tetrahydrocannabinol ("THC"), with leave to refile the charge in county court as a misdemeanor. Because the State was unable to make a prima facie showing that the defendant committed a felony, we affirm the trial court.

*Background*

The defendant was charged with one count of possession of THC, contrary to sections 893.03(1)(c)190.a, Florida Statutes (2019) and 893.13(6)(a), Florida Statutes (2019), after being found in possession of three cartridges containing a liquid for vaping with an electronic cigarette.

The defendant moved to dismiss the charge, arguing that because the total gross weight of the alleged THC was 14.04 grams, he was improperly charged in circuit court with a third degree felony when he should have

been charged in county court with a first degree misdemeanor under section 893.13(6)(b), Florida Statutes (2019). Section 893.13(6)(b) proscribes as a misdemeanor possession of twenty grams or less of cannabis. § 893.13(6)(b), Fla. Stat. (2019). More specifically, the defendant argued that THC is a naturally occurring psychoactive chemical compound found in the cannabis plant and is also commercially produced as a synthetic compound. Because the Broward County Sheriff's Office Crime Lab ("BSO Crime Lab") was unable to analyze the vaping compound in a manner to determine whether the THC he possessed was synthetic or natural, he further argued that it was impossible to determine whether the charge is a felony or a misdemeanor, and therefore, applying the rule of lenity, the felony charge should be dismissed with leave for the State to re-file as a misdemeanor.

At the hearing on the motion to dismiss, the defense called the forensic chemist from the BSO Crime Lab who conducted the analysis of the substance in the vaping cartridges. The chemist testified that THC is the active compound found in cannabis and the report of his results was entered into evidence. The chemist did a visual inspection of the substance, which was a liquid inside one of the cartridges, using a microscope and also used a gas chromatography mass spectrometry test to analyze the substance. The chemist testified he documented the results of his analysis as "tetrahydrocannabinols" in the plural form because he could not tell whether the source originated as THC or THCA, a similar compound. He testified that THC can be naturally accessed from the cannabis plant but can also be synthetically produced. The chemist testified multiple times that the THC compound he analyzed in this case could have come from the actual plant, but it could have also been synthetically manufactured in a laboratory, and that his analysis could not distinguish the two or determine the origin. When asked if synthetic THC has characteristics similar to natural THC, the chemist responded that "[t]hey would be identical," not just similar, but "exact."

When asked on direct examination about marijuana resin, the following exchange occurred:

> Q. Can you tell if the compound you have identified if that comes from a compound manufacture, salt, derivative, mixture, or preparation of the plant or seeds of marijuana? Do you want me to repeat that again?

> A. No. I can only tell you what it is, not where it came from.

2

Q. Do you know what marijuana resin is?

A. Yes.

Q. What is marijuana resin?

A. That is exactly what we call it, marijuana resin.

Q. Do you know how that is created or how that is manufactured?

A. The plant produces it.

Q. Can you just scrape it off a plant or whatever?

A. We have gotten preparations where they have scraped resins from the leaves. That is how they make things like hash or hash oil.

Q. Do you know if the compound that you detected is a product of resin?

A. Again, I can't say where the product came from whether synthetic or natural. I can only tell you what it is.

. . . .

Q. I think you said a little while ago you don't know what the chemical composition of the oil is?

A. Right. We don't investigate non-controlled substances. We only find what the controlled substances are, if any, and then report it.

Q. I think the example I gave you, do they take vegetable oil and put THC in it?

A. Vegetable oil, I don't know if that is what they do as a base or substrate. But I think the question is, where does the THC come from? I can't say whether it is natural or artificial.

3

Q.      What I am trying to get at, do you know if they just take some vegetable oil and sprinkle it with THC?  Do you know if that is what they do?

A.      The only thing I found in there as far as oils go would be Vitamin E.  But they do have other peaks that I mentioned on the chromatogram that I don't bother trying to match them up.

On cross-examination of the chemist by the State, the following exchange occurred:

Q.      Let's start from the beginning.  When you inspected the sample provided to you, you said you inspected it for any plant material?

A.      Right.

Q.      Was any found?

A.      No, not under the microscope.  I found liquid.

Q.      Just liquid.  And no plant material there?

A.      Right.

Q.      Now, you described resin to be taken directly from the plant?

A.      It can.

Q.      Was it a liquid type kind of gooey?

A.      It was a very thick type of liquid, yes.

Q.      So very thick liquid.  Would you call that a resinous abstract of the plant, if it was abstracted from the plant?

A.      If it was abstracted from the plant, yes.

Q.      It could be a resinous abstract.

A.      The term resin was referred to by being from a plant.

4

Q.   And it would—

A.   Looking at the dictionary, it would be from a plant.

Q.   I'm sorry, could you repeat that?

A.   If you look at the dictionary definition of resin, it would have it referring to coming from a plant.

Q.   Is [sic] somebody were to remove this liquid resin from a plant and abstract it, you would categorize it as resinous abstract?

A.   I have referred to it in other lab reports as—in this case, I said it was a liquid.  But for other times I would put down the word resin.

Q.   And this derived from the cannabis plant?

A.   As far as the resin go, it does produce cannabis resin, yes.

Q.   You said there is a street name for this resinous abstract using preparation, basically called hash?

A.   The old-fashion term would be called hash or hash oil. It depends on whether it is solid or liquid.  Hash oils is more—actually it is kind of like an oil.

The defendant argued at the close of the evidence that the State charged him with violating section 893.03(1)(c)190.a., governing "synthetic cannabinoids."  He further argued that the State could not remove the substance in the vaping cartridges from the definition of cannabis under section 893.02(3), Florida Statutes (2019), which includes "all parts of any plant of the genus Cannabis" and "every compound, manufacture, salt, derivative, mixture, or preparation of the plant or its seeds."  The defendant contended that because the substance in this case could not be removed from the definition of cannabis, the misdemeanor limitation for possession of twenty grams or less of cannabis was applicable, noting that all that was excluded from that misdemeanor limitation was resin, which was not shown to be present, based on the chemist's testimony.  Because it could not be clearly established that the misdemeanor exception did not apply to the substance, the defendant argued the matter should be

5

resolved in his favor by dismissing the felony charge and allowing the State to proceed with a misdemeanor charge.

The State responded that whether the substance was synthetic or natural was irrelevant because the legislature made it clear that the misdemeanor applies to a "substance," while section 893.03(1)(c)190.a applies to the "chemical isolation" of THC. It argued that the definition of cannabis was a broad stroke definition of a plant and everything thereunder, and that the legislature intended to isolate the families of compounds listed in section 893.03 from the definition of cannabis under sections 893.02 and 893.13.

In the order granting the motion to dismiss, the trial court framed the issue before it as whether the THC found in the vaping cartridges was synthetic or natural, concluding that if synthetic, then the defendant was properly charged with a felony, but that if the substance was natural, then based on the amount found, he could only be charged with a misdemeanor. The trial court explained that "section 893.03(1)(c)(190)(a) identifies the felony level substance as 'Synthetic Cannabinoids'" and that "[i]n reading the statute, the ordinary meaning of that statute is that the synthetic compound of cannabinoids is a felony level offense as determined by the Florida Legislature." The trial court noted the chemist's testimony that he could not identify if the substance was synthetic or natural, and the State's failure to offer any evidence that the substance was of synthetic or natural origin. Therefore, the trial court reasoned, the State could not offer any evidence which would exclude the cannabis plant as the source of the THC and, as such, the State could not present a prima facie case that the defendant's possession of THC was a felony, rather than a misdemeanor.

The State gave notice of appeal of the final order dismissing the case with leave for the State to re-file as a misdemeanor.

*Appellate Analysis*

"The standard of review on a motion to dismiss is de novo because '[t]he purpose of a motion to dismiss is to allow a pretrial determination of the law of the case when the facts are not in dispute.'" *State v. Smith*, 67 So. 3d 409, 411 (Fla. 4th DCA 2011) (alteration in original) (quoting *State v. Pasko*, 815 So. 2d 680, 681 (Fla. 2d DCA 2002)). Additionally, on a motion to dismiss, the State must "'only . . . show a prima facie case,' and 'is entitled to the most favorable construction of the evidence, and all inferences should be resolved against the defendant.'" *Id.* (quoting *Pasko*, 815 So. 2d at 681). "The motion to dismiss should be granted 'only where

6

the most favorable construction to the state would not establish a prima facie case of guilt.'" *Id.* (quoting *Pasko*, 815 So. 2d at 681).

On appeal, the State contends that the trial court misapprehended the facts and did not properly apply the constructs of statutory interpretation in granting dismissal. Its fundamental premise for reversal is that "the trial court . . . erred when it decided that possession of 14.04 grams of the [THC] substance, if it was found to be of natural origin, had to be a misdemeanor."

In the trial court, the State contended the misdemeanor exception to possession of cannabis under section 893.13(6)(b) did not apply to the "chemical isolation" of cannabis or THC. More specifically, the State argued as follows:

> State: It is the State's position this definition is outlined. The definition of cannabis in 893.023 [sic] is the broad stroke of the definition of the plants and everything that can fall under. I believe the legislators intended to isolate these family of compounds in separating them and it [section 893.03] demonstrates that.
>
> That being said, regardless of the origin of this material, the chemist says he does not know where it came from and he only knows that this substance falls into this category specifically enumerated in the statute.
>
> So the State is not charging him with cannabis, we are charging him with possession of this molecule regardless of the source.

The defense responded: "The problem the State has is that the molecule falls squarely within the generalized definition of cannabis."

On appeal, the State abandoned the terms "chemical isolation" and "molecule" in constructing its argument, and instead reframes its argument to contend that misdemeanor possession of cannabis applies only to *plant material* less than twenty grams, so long as the plant material is not resin.

The information filed against the defendant alleged that:

[The defendant] did unlawfully have in his actual or constructive possession a controlled substance, to-wit: Tetrahydrocannabinols, the active ingredient in Cannabis Sativa L, commonly known as THC, contrary to F.S. 893.03(1)(c)190a. and F.S. 893.13(6)(a), (L3).

Section 893.13(6)(a), Florida Statutes, provides:

(6)(a) A person may not be in actual or constructive possession of a controlled substance unless such controlled substance was lawfully obtained from a practitioner or pursuant to a valid prescription or order of a practitioner while acting in the course of his or her professional practice or to be in actual or constructive possession of a controlled substance except as otherwise authorized by this chapter. A person who violates this provision commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

§ 893.13(6)(a), Fla. Stat. (2019)

Section 893.02(4), Florida Statutes (2019), provides that "'[c]ontrolled substance' means any substance named or described in Schedules I-V of s. 893.03." Although the information references section 893.03(1)(c)190.a., Florida Statutes, in describing the crime charged, significantly section 893.03 does not contain any language defining criminal conduct. Instead, the very lengthy statute merely defines five different schedules of controlled substances by categories. The controlled substances in each schedule are described by chemical names, and most schedules describe the controlled substance to include "any material, compound, mixture, or preparation" containing the chemical, as well as "salts, isomers, . . . homologues, analogs, esters, etc." of the chemical.

Section 893.03(1)(c)190.a. defines the controlled substance the defendant was charged with possessing as follows:

190. Synthetic Cannabinoids. –Unless specifically excepted or unless listed in another schedule or contained within a pharmaceutical product approved by the United States Food and Drug Administration, any material, compound, mixture, or preparation that contains any quantity of a synthetic cannabinoid found to be in any of the following chemical class descriptions, or homologues, nitrogen-heterocyclic analogs, isomers (including optical, positional, or geometric), esters, ethers, salts, and salts of homologues, nitrogen-heterocyclic

8

analogs, isomers, esters, or ethers, whenever the existence of such homologues, nitrogen-heterocyclic analogs, isomers, esters, ethers, salts, and salts of isomers, esters, or ethers is possible within the specific chemical class or designation. Since nomenclature of these synthetically produced cannabinoids is not internationally standardized and may continually evolve, these structures or the compounds of these structures shall be included under this subparagraph, regardless of their specific numerical designation of atomic positions covered, if it can be determined through a recognized method of scientific testing or analysis that the substance contains properties that fit within one or more of the following categories:

a. Tetrahydrocannabinols. –Any tetrahydrocannabinols *naturally contained in a plant of the genus* Cannabis*, the synthetic equivalents of the substances contained in the plant or in the resinous extracts of the genus* Cannabis*, or synthetic substances, derivatives, and their isomers with similar chemical structure and pharmacological activity* . . . .

§ 893.03(1)(c)190.a., Fla. Stat. (2019) (emphasis added).

Pertinent to the analysis is the definition of cannabis found in section 893.02(3):

(3) "Cannabis" means all parts of any plant of the genus *Cannabis*, whether growing or not; the seeds thereof; the resin extracted from any part of the plant; and *every compound, manufacture, salt, derivative, mixture, or preparation of the plant or its seeds or resin.* The term does not include "marijuana," as defined in s. 381.986, if manufactured, possessed, sold, purchased, delivered, distributed, or dispensed, in conformance with s. 381.986. The term does not include hemp as defined in s. 581.217 or industrial hemp as defined in s. 1004.4473. The term does not include a drug product described in s. 893.03(5)(d).

§ 893.02(3), Fla. Stat. (2019) (emphasis added).

The defendant sought reduction of his charge to a misdemeanor by asserting that section 893.13(6)(b) applied to his case, since the controlled substance he was charged with possessing weighed only 14.04 grams. Section 893.13(6)(b) provides:

(b) If the [possession of controlled substance] offense is the possession of 20 grams or less of cannabis, as defined in this chapter, the person commits a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083. *As used in this subsection, the term "cannabis" does not include the resin extracted from the plants of the genus* Cannabis*, or any compound manufacture, salt, derivative, mixture, or preparation of such resin.*

§ 893.13(6)(b), Fla. Stat. (2019) (emphasis added).

The trial court correctly agreed with the defendant's position that he should be charged with a misdemeanor unless the State was able to establish a prima facie showing that the defendant committed a felony by possessing the three vaping cartridges. A plain reading of the statutory language reflects that the misdemeanor exception does not apply to possession of *resin* or "any compound manufacture, salt, derivative, mixture, or preparation *of such resin.*" *Id.* (emphasis added). Rather, the misdemeanor exception applies to possession of twenty grams or less of "all parts of any plant of the genus *Cannabis*, whether growing or not; the seeds thereof . . . and every compound, manufacture, salt, derivative, mixture, or preparation of the plant or its seeds," *except for the resin or derivatives of the resin.* §§ 893.02(3), 893.13(6)(b), Fla. Stat. (2019).

We do not agree with the State's assertion that the *source* of the THC is irrelevant. If the source of the THC was a "compound, manufacture, salt, derivative, mixture, or preparation of the plant or its seeds," *but not the resin of a cannabis plant or any compound manufacture, salt, derivative, mixture, or preparation of such resin*, then the misdemeanor exception for prosecution would apply to the defendant's possession, given the quantity possessed.

Notably, the State never argued below that the THC substance in the cartridges came from cannabis resin or any compound manufacture, salt, derivative, mixture, or preparation of such resin. On appeal, the State contends that the witness testified that the substance here was either synthetically created or natural, but that if it was natural, then it was a resinous extract, such as would be excluded from the misdemeanor exception. However, we have examined the testimony of the chemist closely, and conclude that although he was questioned about cannabis resin, he never was directly asked and never directly testified that his analysis revealed the THC source in this case was cannabis resin. Instead, he repeatedly said he could not conclude whether the source of the THC

10

was natural or synthetic. The chemist consistently referred to the substance as a "liquid." Although he agreed with the State that resins are "gooey," he did not testify that the "liquid" in the cartridges was "gooey" or a resin.

We conclude that the trial court correctly understood the defendant could be charged with a felony only if the State could make a prima facie showing that the source of the THC substance possessed by the defendant was either artificially produced, cannabis resin, or "any compound manufacture, salt, derivative, mixture, or preparation of such resin." Because the State's chemist was unable to make such a showing, and the State failed to proffer any further evidence, we affirm the trial court's order of dismissal.

*Affirmed.*

GERBER and KLINGENSMITH, JJ., concur.

\*     \*     \*

***Not final until disposition of timely filed motion for rehearing.***